**Derrico DAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A05–0607–CR–368.

Court of Appeals of Indiana.

April 9, 2007.

---

Thomas W. Vanes, Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Derrico Davis appeals his conviction for dealing in cocaine as a class B felony.[1] Davis raises one issue, which we revise and restate as whether the evidence is sufficient to sustain Davis's conviction. We affirm.

The facts most favorable to the conviction follow. On February 25, 2004, Gary Police Officers were involved in a controlled drug buy in the 600 block of Ohio Street in Gary after receiving several calls from concerned citizens of possible illegal drug activity. While being monitored by police officers, a confidential informant approached Kristopher Boyd, Bobby Heath, and Davis, all of whom had been talking with each other in front of 688 Ohio Street,

---

1. Ind.Code § 35–48–4–1 (2004) (subsequently amended by Pub.L. No. 151–2006, § 22 (eff. July 1, 2006)).

Davis's residence. The confidential informant and Boyd walked a short distance away from Davis and Heath but were still in the same area. The confidential informant exchanged the buy money for 0.8 grams of cocaine. The confidential informant returned to a vehicle containing the police and informed them that the buy was a success.

Davis was in front of the house just before the police gave the "go signal." Transcript at 183. Detective Irving Givens and Detective Jolly drove to the front of 688 Ohio Street, which took five to ten seconds, exited their vehicle, and yelled that they were police officers. At this time, Boyd and Bobby Heath were in the front of the house, and Boyd ran to the backyard. Boyd threw something over the fence, which was later determined to be five baggies containing an "off-white rock-like substance" that resembled crack cocaine. *Id.* at 155.

When Detective Givens ran to the backyard, he found Davis leaning over inside a wooden wishing well in the backyard. Davis had both his hands down inside the wishing well. Detective Givens ordered Davis to step away from the well, and Davis complied. Detective Givens told Gary Police Sergeant Kirk Banker to take Davis to the front of the house. Detective Givens then went to pursue Boyd, who had attempted to climb a fence but became stuck on the top of the fence. Detective Givens then returned to the wishing well where he discovered a clear knotted plastic baggie that contained twelve smaller baggies that each contained an off-white rock-like substance that later tested positive for cocaine and weighed, in total, 1.69 grams. The clear knotted baggie looked like it had been freshly placed in the wishing well. A twenty-dollar bill and a ten-dollar bill were found on the ground in front of the house,

and the buy money was recovered from Boyd's front pocket.

The State charged Davis with dealing in cocaine as a class B felony. The jury found Davis guilty as charged. The trial court sentenced Davis to fifteen years in the Department of Correction.

▬ The sole issue is whether the evidence is sufficient to sustain Davis's conviction for dealing in cocaine as a class B felony. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

The offense of dealing in cocaine is governed by Ind.Code § 35–48–4–1, which provides that "[a] person who ... knowingly or intentionally ... possesses, with intent to ... deliver ... cocaine ... commits dealing in cocaine ... a Class B felony." Thus, to convict Davis of dealing in cocaine as a class B felony, the State needed to prove that: (1) Davis knowingly or intentionally; (2) possessed; (3) with intent to deliver; (4) cocaine.

▬ Davis argues that the evidence is insufficient to sustain his conviction because the State did not prove that he had the intent to deliver. A conviction for possession with intent to deliver cocaine may be supported by either direct or circumstantial evidence. *Montego v. State*, 517 N.E.2d 74, 76 (Ind.1987). Intent involves a person's state of mind, and the fact finder can "infer its existence from surrounding circumstances when determining whether the requisite intent ex-

ists." *Goodner v. State,* 685 N.E.2d 1058, 1062 (Ind.1997).

Specifically, Davis argues that the facts of this case "closely resemble those in" *Johnson v. State,* 594 N.E.2d 817 (Ind.Ct. App.1992). Appellant's Brief at 5. In *Johnson,* the Muncie Fire Department responded to a report of smoke at a residence. 594 N.E.2d at 818. The firefighters discovered intense heat in the furnace area but were unable to locate the gas shut-off valve. *Id.* Muncie Police were dispatched to the scene in order to gain entry to the home. *Id.*

A police officer observed Johnson sitting at a table "arranging" a powder substance with a knife. *Id.* In response to questions concerning this activity, Johnson stated, "I am cutting up coke, motherfucker and I got more in my coat." Id. Johnson was arrested and five sealed packages containing a total of 1.76 grams of cocaine were found in his coat pocket. *Id.* The defendant was convicted of dealing in cocaine as a class B felony. *Id.* On appeal, we addressed whether the State proved that the defendant intended to deliver cocaine. *Id.* We noted testimony in the record that the cocaine was packaged consistent with "having been bought on the street," that Johnson frequently used drugs, "usage which readily supports the conclusion that Johnson intended to consume the 1.76 grams of cocaine within one day," and that "individual cocaine users consume in excess of 3.2 grams per day." *Id.* at 819. We noted that a total weight of 1.76 grams is "hardly a quantity 'consistent with business and personal use,'" and that the case was "devoid of any other circumstantial evidence supporting the inference that Johnson intended to deal the drugs." *Id.* at 820 (quoting *Chandler v. State,* 581 N.E.2d 1233, 1237 (Ind.1991)).

■ We find *Johnson* distinguishable. First, unlike in *Johnson,* there was no testimony that Davis frequently used drugs. Second, there was no testimony that the twelve bags were consistent with personal use. Gary Police Commander John Jelks testified that the amount of crack cocaine used for personal use "depends on the individual, on their tolerance" and "[n]ormally what we find most users will buy dime bags, $10 bags or a couple of $10 bags." Transcript at 160. Commander Jelks also stated that "a normal purchase is a $10 bag, but we do see—we're seeing two individuals go together and put $5 and buy a $10 bag and split that." *Id.* at 160–161. Further, Commander Jelks testified that "[i]f you run into someone who is like carrying 10, 15, 20, and up bags, that's not personal use; that's street—that's distribution weight." *Id.* at 128–129.

Third, unlike in *Johnson,* we cannot say that this case is devoid of circumstantial evidence. Commander Jelks testified about "[c]urbside service," which is "an open-air drug market" that is "operated by anywhere from three, four, five individuals." *Id.* at 136. Specifically, Commander Jelks testified that curbside service involves the following process:

You may have one individual who makes the approach to the customer, will approach the customer, find out what they want, what amount. He will relay that information to the next person who will then come up and accept the money. This person with the money will then go back, touch bases with the individual that has the drugs, will get that certain amount that was purchased or requested to be purchased. And it goes back through that same chain back until it reaches the customer or the person that retrieves the drugs will come out and deliver it to them, and then that person leaves the area.

*Id.* at 136–137. Commander Jelks also stated that the participants in a curbside service "watch each other's back" and "stash [drugs] off away from themselves, and that was related to—to relate to the drugs that were stashed back there in that wishing well." *Id.* at 205, 208.

The record reveals that Gary Police Officers were involved in a controlled drug buy in the front of Davis's residence after receiving several calls regarding possible drug activity. Davis talked with Boyd and Heath in front of the residence. Boyd and the confidential informant walked a short distance away from the other two males but were still in the same area. The confidential informant exchanged the buy money for 0.8 grams of cocaine.

Davis was in front of the house just before the police gave the "go signal." *Id.* at 183. Detective Givens and Detective Jolly drove to the front of 688 Ohio Street, which took five to ten seconds, exited their vehicle, and yelled that they were police officers. At this time, Boyd and Heath were in the front of the house, and Boyd ran to the backyard. Boyd threw something over the fence, which was later determined to be five baggies containing an "off-white rock-like substance" that resembled crack cocaine. *Id.* at 155.

When Detective Givens ran to the backyard, he found Davis leaning over inside a wooden wishing well in the backyard. Davis had both his hands down inside the wishing well. Detective Givens went to the wishing well where he discovered a clear knotted plastic baggie that contained twelve smaller baggies that each contained an off-white rock-like substance that later tested positive for cocaine and weighed 1.69 grams. The clear knotted baggie looked like it had been freshly placed in the wishing well. A twenty-dollar bill and a ten-dollar bill were found on the ground in front of the house. The buy money was recovered from Boyd's front pocket. Under the circumstances, we conclude that the State presented sufficient evidence for a trial court to conclude that Davis had the intent to deliver. *See, e.g., Stokes v. State,* 801 N.E.2d 1263, 1272 (Ind.Ct.App.2004) (holding that the evidence was sufficient to support the jury's determination that the defendant possessed cocaine with the intent to deliver), *trans. denied.*

For the foregoing reasons, we affirm Davis's conviction for dealing in cocaine as a class B felony.

Affirmed.

CRONE, J. concurs.

SULLIVAN, J. dissents with separate opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent.

The evidence would concededly point to Boyd as an individual who was involved in dealing cocaine. He not only actually sold a small quantity to the confidential informant but then fled and attempted to dispose of an additional quantity of cocaine. The same cannot be said of Davis.

Although Davis and the others were, at one point in time, near or in front of Davis's residence, Boyd walked some distance away from the others in making the sale transaction to the informant. Furthermore, the quantity of cocaine directly associated with Davis was the small quantity (less than that involved in the *Johnson* case) recovered from the wishing well. Commander Jelks testified that the circumstances appeared to be similar to drug "curbside service." That implication was not substantiated by anything other than his speculative (although perhaps accurate) description of the scene.

It may well be that all three men at the site were involved in street drug traffick-

ing. However, in my estimation the evidence against Davis falls short of the requisite degree of proof essential to a dealing conviction.

For this reason I would reverse and remand with instructions to discharge the defendant Davis.