# FOR PUBLICATION



**FILED**

Dec 17 2014, 8:24 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD E. C. LEICHT**
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

GARY ELVERS,                          )
                                      )
    Appellant-Defendant,              )
                                      )
        vs.                           )      No. 34A02-1404-CR-239
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.               )

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Judge
Cause No. 34D01-1207-FD-592

**December 17, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Gary Elvers (Elvers), appeals his conviction of three Counts of dealing in a synthetic drug, Class D felonies, Ind. Code § 35-48-4-10(a)(2),(b)(1)(B) (2012); and one Count of maintaining a common nuisance, a Class D felony, I.C. § 35-48-4-13(b)(2).

We affirm in part, vacate in part, and remand.[1]

## ISSUES

Elvers raises six issues on appeal, which we consolidate and restate as the following four issues:

(1) Whether Indiana Code section 35-38-4-10 is unconstitutional;

(2) Whether the State improperly charged Elvers;

(3) Whether the trial court abused its discretion by admitting certain evidence; and

(4) Whether there is sufficient evidence to support Elvers' conviction of dealing in a synthetic drug.

## FACTS AND PROCEDURAL HISTORY

Prior to the onset of these proceedings, Elvers owned Elvie's, a retail smoke shop in Kokomo, Indiana. Elvie's was in the business of selling tobacco, pipes, rolling papers,

---

[1] In two prior memorandum decisions, our court noted that the record emitted a foul odor consistent with cigarette or pipe smoke, and we asked that those who handle the appellate record refrain from such contamination in the future. *See Rice v. State*, No. 49A02-1401-CR-12 (Ind. Ct. App. Sept. 30, 2014); *Wampler v. State*, No. 09A02-1201-CR-61 (Ind. Ct. App. July 3, 2012). It appears that our requests were disregarded because the record in the instant case is permeated with the same repugnant stench. The fact that all three of these malodorous records were handled by the same Deputy Attorney General prompts us to direct this third entreaty to the Office of the Attorney General with the demand that our request for clean, unscented records be heeded.

incense, detoxification products, novelty items, and a variety of products commonly known as "spice" and "bath salts." (Transcript p. 173). Effective July 1, 2011, Indiana law prohibited dealing in "synthetic cannabinoid[s]." I.C. § 35-48-4-10 (2011). A corresponding statute set forth a detailed list of illicit cannabinoids, which included, in part, any substances containing JWH-122 and JWH-250. *See* I.C. § 35-41-1-26.3(6),(8) (now codified at I.C. § 35-31.5-2-321(1)(F),(H)) (collectively, the Synthetic Drug Law). Shortly thereafter, Lieutenant Tonda Cockrell (Lieutenant Cockrell) of the Kokomo Drug Task Force delivered a copy of the updated statutes to Elvie's. Aware that the chemical composition of spice often consists of these newly-banned substances, Lieutenant Cockrell asked Elvers to submit samples of his products for analysis, which he declined.

Subsequent to the statutory enactment, the Kokomo Police Department noted a sharp increase in the number of complaints related to Elvie's. Between July of 2011 and March of 2012, the Department received nineteen calls from Elvers and his staff to report burglaries and theft, in addition to other reports from concerned community members regarding Elvie's products. As a result, the Drug Task Force commenced an investigation. On September 30, 2011, Detective James Nielson (Detective Nielson), acting undercover, purchased several packets of spice and bath salts from Elvie's, which he subsequently submitted to the Indiana State Police Lab for testing. A month later, the Lab results confirmed that the spice contained JWH-122 and JWH-250. On October 28, 2011, Detective Nielson returned to Elvie's and purchased two more packets of spice, and on February 9, 2012, the Lab results indicated the presence of JWH-122 in one of the packets.

On March 15, 2012, an emergency amendment to the Synthetic Drug Law went into effect, which replaced "synthetic cannabinoid" with "synthetic drug." I.C. § 35-48-4-10 (2012) (current version at I.C. § 35-48-4-10.5). Under the amended law, the list of illicit chemical compounds incorporated the same substances previously banned as "synthetic cannabinoids"—such as JWH-122 and JWH-250—but also added a significant number of new compounds. I.C. § 35-41-1-26.3.[2] Four days later, Detective Nielson attempted to make a third undercover purchase of spice and bath salts from Elvie's. At this time, Detective Nielson observed that the display case no longer contained the merchandise he had previously observed, and a store clerk informed him that no spice or bath salts were available for purchase.

Later that day, March 19, 2012, Kokomo police officers obtained and executed a search warrant at Elvie's. As part of the search, a K-9 officer escorted his drug-sniffing dog through the building and parking lot. Based on the dog's alerts, the police officers obtained two more warrants to search a vehicle registered to Elvie's and a purse that belonged to the store manager. Also, the police officers applied for additional warrants to search the cash drawer and two gun safes. At the conclusion of the search, the officers had seized business records, more than $10,000 in cash, and nearly 1,000 spice and bath salt products. Detective Nielson subsequently submitted sixteen randomly-selected items to the State Police Lab for testing, fifteen of which yielded positive results for controlled

---

[2] The amendment to Indiana Code section 35-41-1-26.3 was also effective as of March 15, 2012. *See* Ind. Pub. L. No. 78-2012, § 11. Then on July 1, 2012, Indiana Code section 35-41-1-26.3 was repealed and recodified into its current form at Indiana Code section 35-31.5-2-321.

4

substances.  Five of the spice packets contained JWH-122 and weighed a total of 14.51 grams; four contained JWH-250 and weighed a total of 3.39 grams.  The six bath salt products tested positive for the synthetic drugs alpha-PVP and pentylone.

On July 5, 2012, the State filed an Information, charging Elvers with six Class D felonies pursuant to Indiana Code section § 35-48-4-10(a)(2),(b)(1)(B):  Count I, dealing in the synthetic drug pentylone; Counts II and VII, dealing in the synthetic drug alpha-PVP; Counts III and V, dealing in the synthetic drug JWH-122; and Count IV, dealing in the synthetic drug JWH-250.  The State also charged Elvers with Count VI, maintaining a common nuisance, a Class D felony, I.C. § 35-48-4-13(b)(2).  On September 4, 2012, Elvers filed a motion to dismiss the charges, alleging the Synthetic Drug Law to be unconstitutionally vague.  On November 7, 2012, Elvers filed a motion to suppress the evidence seized from Elvie's based on a defective search warrant.  Following a hearing on November 16, 2012, the trial court denied Elvers' motion to dismiss.  On February 1, 2013, the trial court held a hearing on his motion to suppress and denied the same on April 9, 2013.

On January 31, 2014, a four-day jury trial commenced.  At the close of the evidence, the jury returned a guilty verdict as to Counts III, IV, V, and VI.[3]  On March 12, 2014, the trial court conducted a sentencing hearing.  For each of the four Counts, the trial court

---

[3] The jury found Elvers not guilty of Counts I, II, and VII, which charged him with dealing in synthetic drugs (alpha-PVP and pentylone) that were not illegal until March 15, 2012.  *See* I.C. § 35-31.5-2-321(1)(NN),(LLL).  Additionally, in his appellate brief, Elvers indicates an intent to challenge his conviction of Count VI, maintaining a common nuisance, but because he does not further develop this argument, we confine our review to his convictions of Counts III through V.

imposed concurrent sentences of 548 days, with 365 days executed on in-home detention and 183 days suspended to supervised probation.

Elvers now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Constitutionality of the Synthetic Drug Law*

Elvers claims that the trial court erred in denying his motion to dismiss the charging Information because the Synthetic Drug Law, as it existed on March 19, 2012, is unconstitutional. While the denial of a motion to dismiss is generally reviewed under an abuse of discretion standard, the constitutionality of a statute is a question of law that our court reviews *de novo*. *Salter v. State*, 906 N.E.2d 212, 215 (Ind. Ct. App. 2009), *reh'g denied*. Because we presume that the General Assembly enacts constitutional laws, the burden is on the challenger to prove otherwise. *Lee v. State*, 973 N.E.2d 1207, 1209 (Ind. Ct. App. 2012), *trans. denied*. Any doubts regarding a statute's validity are resolved in favor of its constitutionality. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012).

A. *Technical Terms*

First, Elvers contends that the Synthetic Drug Law is contrary to the mandate of the Indiana Constitution that "[e]very act and joint resolution shall be plainly worded, avoiding, as far as practicable, the use of technical terms." Ind. Const. art. 4, § 20. A basic tenet of "due process requires that a penal statute 'clearly define its prohibitions.'" *Lock*, 971 N.E.2d at 74 (quoting *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007)). Thus, a criminal statute will be held unconstitutionally vague if it fails to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that 'no man shall be

6

held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Brown*, 868 N.E.2d at 467 (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)). We will examine a vagueness challenge in light of the precise circumstances of the present case. *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008).

Elvers acknowledges that in *Kaur v. State*, 987 N.E.2d 164, 168-69 (Ind. Ct. App. 2013), our court rejected a vagueness challenge to the Synthetic Drug Law because—as in Elvers' case—the synthetic drug in question was specifically identified in the statute. Nevertheless, he argues that the Synthetic Drug Law is written "like a chemical engineer's dissertation, [such that] ordinary citizens, who are supposed to be at the top of the power-chain, will not know what is proscribed." (Appellant's Br. pp. 7-8). At the time of Elvers' crime, the Synthetic Drug Law provided that "[a] person who . . . possesses, with intent to . . . deliver . . . a synthetic drug, pure or adulterated[,] commits dealing in . . . a synthetic drug." I.C. § 35-48-4-10(a)(2)(C) (2012). The Synthetic Drug Law then specifically defined a synthetic drug, in part, as

> a substance containing one (1) or more of the following chemical compounds:
> * * * *
> (6) JWH-122 (1-pentyl-3-(4-methyl-1-naphthoyl)indole).
> * * * *
> (8) JWH-250 (1-pentyl-3-(2-methoxyphenylacetyl)indole).

I.C. § 35-41-1-26.3(6),(8) (now codified at I.C. § 35-31.5-2-321(1)(F),(H)). According to Elvers, it is this list of synthetic drugs that is too technical for individuals of ordinary intelligence to comprehend. We disagree.

7

Article 4, Section 20 instructs the General Assembly to avoid the use of technical terms to the extent that it is *practicable*. The novelty, complexity, and rapidly-evolving nature of synthetic drugs necessitates some scientific terminology in the law. As the forensic scientist from the State Police Lab explained, the chemical composition of synthetic drugs varies by manufacturers, products, and batches, so chemical analyses are necessary to discern whether a particular product contains an illegal drug. By identifying both the name and the chemical structures of the banned substances, the Synthetic Drug Law ensures that individuals are charged only if found in possession of a compound that is specifically proscribed.

Furthermore, focusing only on the facts of this case and not hypothetical situations, we decline to find that Elvers' lack of knowledge and understanding of the chemical makeup of JWH-122 and JWH-250 renders the Synthetic Drug Law unconstitutional. *See Kaur*, 987 N.E.2d at 169. Our supreme court has previously determined that so long as a statute is "susceptible to both an intelligible and reasonable construction"—even if it is not "a model of rhetorical clarity"—it satisfies Article 4, Section 20. *Welsh v. Sells*, 192 N.E.2d 753, 762-63 (Ind. 1963) (per curiam), *reh'g denied*. Here, the statute unambiguously notified Elvers that he would be subjected to criminal liability for possessing, with intent to deliver, any substance that contains JWH-122 or JWH-250. Armed with this information, Elvers could have taken measures to ensure that he was not selling merchandise containing these substances.

B. *Weight Enhancement*

8

Second, Elvers contends that the Synthetic Drug Law's weight enhancement is unconstitutional, as applied to the facts of his case. The crime of dealing in a synthetic drug is punishable as a Class A misdemeanor, but the charge is enhanced to a Class D felony if "the amount involved is . . . more than two (2) grams of a synthetic drug." I.C. § 35-48-4-10(b)(1)(B)(ii) (2012). In the present case, Elvers was charged with Class D felonies based on the total weight of the spice that contained synthetic drugs. As such, Elvers argues that because the State did not present evidence of the weight of the JWH-122 and JWH-250 in isolation from the remaining material comprising the spice, he was subjected to a harsher penalty "for possessing a non-proscribed substance with but a trace of a proscribed substance." (Appellant's Br. p. 17). Again, we disagree.

We first note that Elvers did not raise this issue in his motion to dismiss; however, our supreme court has previously decided that "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by [the] [c]ourt." *Tooley v. State*, 911 N.E.2d 721, 723 (Ind. Ct. App. 2009), *trans. denied*. Although Elvers' argument is predominantly incoherent, he seems to posit that the State violated his rights under Article 1, Section 16 of the Indiana Constitution, which provides, in pertinent part, that "[a]ll penalties shall be proportioned to the nature of the offense." To this end, Elvers relies on *Conner v. State*, 626 N.E.2d 803, 805-06 (Ind. 1993), in which our supreme court determined that a conviction for dealing a substance represented to be a controlled substance did not merit a six-year sentence where there were no traces of any illicit drugs in the sample, and the defendant would have received a lesser penalty if he had been dealing actual marijuana. We find *Conner* to be inapposite to Elvers' situation. The synthetic

9

drugs seized from Elvie's did, in fact, test positive for JWH-122 and JWH-250, which are explicitly proscribed by the Synthetic Drug Law. Furthermore, it is well established that the total weight of a final, deliverable (adulterated) drug product—not just the pure component thereof—may be used to support a weight enhancement. *See Buelna v. State*, No. 20S04-1404-CR-243, 2014 WL 5995839, at *4, *8-10 (Ind. Nov. 13, 2014). Accordingly, as the spice containing JWH-122 weighed 14.51 grams and the spice containing JWH-250 weighed 3.39 grams, the State did not violate Elvers' constitutional rights by enhancing his charges.

## II. *Charging Information*

### A. *Crime Alleged*

Next, Elvers claims that his charges were improper because the Information failed to allege a crime. In particular, Elvers argues that he "was charged with possessing a plant material that contained a synthetic drug[,]" which he maintains is not proscribed by Indiana law. (Appellant's Br. p. 7). Yet, as the State correctly asserts, Elvers failed to raise this contention in his motion to dismiss and, therefore, has waived the issue on appeal. *See Wilhoite v. State*, 7 N.E.3d 350, 352 (Ind. Ct. App. 2014). Waiver notwithstanding, because "it is a due process violation for the State to convict people of crimes that do not exist[,]" we will address the merits of Elvers' claim. *Id.*

"The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Gilliland v. State*, 979 N.E.2d 1049, 1060 (Ind. Ct. App. 2012). The information must, in part, "stat[e] the name of the offense in the words of the statute or any other words conveying the same

10

meaning" and explain "the nature and elements of the offense charged in plain and concise language without unnecessary repetition." I.C. § 35-34-1-2(a)(2),(4). The State is under no obligation to include detailed factual allegations; rather, a charging information satisfies due process if it "enables an accused, the court, and the jury to determine the crime for which conviction is sought." *Gilliland*, 979 N.E.2d at 1061. "Errors in the information are fatal only if they mislead the defendant or fail to give him notice of the charge filed against him." *Id.*

Employing the language of the Synthetic Drug Law, Counts III and V of the Information charge Elvers, in relevant part, with "knowingly or intentionally possess[ing] with the intent to deliver plant material with the brand name of [spice products identified,] containing JWH-122, a synthetic drug in an amount greater than 2 grams and less than 300 grams." (Appellant's App. pp. 17, 19). Likewise, Count IV states that Elvers did "knowingly or intentionally possess with the intent to deliver a plant material with the brand names [spice products identified,] containing JWH-250, a synthetic drug in an amount greater than 2 grams and less than 300 grams." (Appellant's App. p. 18). Each Count also includes the relevant statutory provisions and the caption "DEALING IN A SYNTHETIC DRUG." (Appellant's App. pp. 17-19). Thus, contrary to Elvers' contention, the Information very clearly charges him with more than simply dealing in "plant materials with specific brand names." (Appellant's Br. p. 9). Because there is no doubt that Elvers was charged with possessing, with the intent to deliver, a synthetic drug, pure or adulterated, we find no error.

B. *Multiple Charges*

11

Count III and Count V of the Information both charge Elvers with dealing in substances containing JWH-122 in excess of two grams. Elvers now contends that these charges should have been merged. Again, we note that Elvers has waived this issue by raising it for the first time on appeal. Nevertheless, waiver notwithstanding, we find that Elvers prevails on the merits.

The State maintains that separate charges were appropriate because the police officers seized 10.62 grams of "Kryp2Nite Original" packages (all of which contained JWH-122) from a cardboard box inside Elvie's bathroom closet, and 3.89 grams of products with brand names such as "Spike Max" and "K4 Silver" (also containing JWH-122) from Elvie's gun safe. The State insists that because the legislature intended to punish dealers more severely, Elvers should be charged based on his "decisions to invest in, and market, multiple types of products containing JWH-122." (State's Br. p. 19). On the other hand, according to Elvers, the separate charges suggest that he was charged for possessing specific brand names of spice rather than for the underlying synthetic drug. We agree with Elvers.

The Synthetic Drug Law proscribes the possession, with intent to deliver, of JWH-122 in any pure or adulterated form—without consideration of the product's brand name or any other ingredients. Furthermore, the Synthetic Drug Law has a built-in penalty for possessing at least two grams of a synthetic drug. I.C. § 35-48-4-10(b)(1)(B)(ii) (2012). Once this two-gram threshold is met, the statute provides for a Class D felony regardless of any quantity in excess thereof. Our court has previously determined that "[t]he essence of the crime of possession of [a controlled substance] is the act of possessing [the controlled

12

substance] on a particular occasion, without respect to the location, quantity, or the number of individual packages . . . possessed." *Stephens v. State*, 588 N.E.2d 564, 657 (Ind. Ct. App. 1992) (footnote omitted), *trans. denied*. In the case at hand, Elvers was effectively convicted of two violations arising "from his single act of simultaneous possession" of multiple products containing JWH-122. *Young v. State*, 564 N.E.2d 968, 972 (Ind. Ct. App. 1991), *trans. denied*. Accordingly, the State should have charged Elvers with only a single Count of dealing in the synthetic drug JWH-122. Even though the error did not result in additional harm to Elvers based on the trial court's imposition of identical, concurrent sentences, we remand to the trial court with instructions to vacate the conviction as to Count V.[4]

### III. *Admissibility of Evidence*

Elvers claims that the trial court abused its discretion by admitting the evidence seized from his business pursuant to five separate search warrants. Specifically, Elvers asserts "that the affidavit tendered for [the] first search warrant is improper under [Indiana Code section] 35-33-5-1 *et seq*[.]," and therefore "the items seized under the first search should have been suppressed, and all subsequent search warrants and the items seized thereunder are likewise fruits of the poisonous tree and should have been suppressed." (Appellant's Br. p. 11).

---

[4] Pursuant to Indiana Appellate Rule 46(A)(8)(a), Elvers has waived his additional claim that the trial court failed to properly instruct the jury because he has not developed a cogently-reasoned argument, supported with citations to authority.

Elvers directs our attention to the form of the first warrant issued on March 19, 2012, and more specifically to the first page, which he posits "looks like an affidavit, not a search warrant. A trial judge is not permitted to be an affiant. He or she is required to be a neutral magistrate." (Appellant's Br. pp. 11-12). In order to be sufficient, Indiana Code section 35-33-5-3 requires a search warrant to be "in substantially the following form":

> To _____ (herein insert the name, department or classification of the law enforcement officer to whom it is addressed) You are authorized and ordered, in the name of the State of Indiana, with the necessary and proper assistance to enter into or upon _____ (here describe the place to be searched), and there diligently search for _____ (here describe property which is the subject of the search). You are ordered to seize such property, or any part thereof, found on such search.
> 
> Dated this ____ day of _____, 20___, at the hour of ___ __M.
> 
> _____
> (Signature of Judge)
> 
> Executed this ___ day of _____, 20___, at the hour of ____ ___M.
> 
> _____
> (Signature of Law Enforcement Officer)

Here, we find the warrant to search Elvie's to be in substantially the same form. The top of the warrant is labeled "SEARCH WARRANT," below which it states:

> To any constable, police officer, sheriff or conservator of the peace, greeting: Whereas, there has been *filed with me an affidavit of which the following is a copy*:
> AFFIDAVIT FOR SEARCH WARRANT
> [Excerpt from Detective Nielson's affidavit of probable cause, describing the place to be search and the items to be sought.]
> 
> You are therefore commanded in the name of the State of Indiana, with necessary and proper assistance in the daytime or nighttime, to enter into or upon the premises described in said affidavit, said premises occupied/owned by the above named person and there search diligently for the above items, to wit: In said affidavit described, and that you bring the same before me to be disposed of according to law.
> Given under my hand this 19th day of March, 2012 at [2:54 p.m.].

14

[Judge's Signature]

(State's Exh. 2, p. 9) (emphasis added).

We find it clear that the issuing judge did not improperly act as an affiant in describing the place to be searched or items to be seized. The warrant specifies that such information was copied directly from an affidavit that was filed with the judge. *See* I.C. § 35-33-5-2(a). Moreover, although Elvers has not demonstrated any prejudice from the subheading "AFFIDAVIT FOR SEARCH WARRANT," to the extent that it created any confusion as to the nature of the document, we find it to be "a minor technical anomaly" that will "not invalidate an otherwise valid search warrant." *Brannon v. State*, 801 N.E.2d 750, 752 (Ind. Ct. App. 2004), *trans. denied*. The warrant contains the statutorily required information, and it is evident that the judge intended to issue the warrant; thus, the warrant is valid, and the trial court did not abuse its discretion by admitting the evidence seized pursuant thereto.[5]

## IV. *Sufficiency of Evidence*

Lastly, Elvers claims that the State presented insufficient evidence to support his conviction for dealing in a synthetic drug. When reviewing claims of sufficiency of the evidence, our court neither reweighs the evidence nor assesses the credibility of witnesses.

---

[5] We decline to address Elvers' additional claim that there was insufficient probable cause to support the issuance of the first search warrant. In his motion to suppress, Elvers alleged only a defect in *form* as grounds for invalidating the warrant, and he raised no objections to the adequacy of a factual basis for probable cause. He may not do so for the first time on appeal. *See Goodner v. State*, 685 N.E.2d 1058, 1060 (Ind. 1997). In addition, Elvers contends that the seized packets of spice and bath salts were improperly admitted into evidence because the State failed to establish a chain of custody. Because Elvers did not object on these grounds during the trial and has not claimed fundamental error, he has also waived this issue for appellate review. *See Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002).

*Davis v. State*, 863 N.E.2d 1218, 1220 (Ind. Ct. App. 2007), *trans. denied*. Rather, we consider the evidence—and any inferences that may reasonably be derived therefrom—most favorable to the verdict to determine whether there is "evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." *Id.*

In order to uphold his conviction, the State had to prove beyond a reasonable doubt that Elvers possessed, with the intent to deliver, "a synthetic drug, pure or adulterated." I.C. § 35-48-4-10(a)(2)(C) (2012). The fact that the synthetic drugs were in Elvers' possession is not in dispute; rather, he argues that the State failed to prove his intent to deliver. An intent to deliver may be demonstrated by either direct or circumstantial evidence. *Davis*, 863 N.E.2d at 1220. "Intent involves a person's state of mind, and a factfinder may infer its existence from the surrounding circumstances." *Wilson v. State*, 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012), *trans. denied*.

Our courts have long held that "[e]vidence of the illegal possession of a relatively large quantity of drugs may support a conviction for possession with intent to deliver" as a larger quantity creates an inference that the drugs are not held for personal consumption. *Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *trans. denied*. In general, evidence that a large quantity of drugs is divided into small, individual portions rather than stored in one large container also supports the inference that the drugs are packaged for sale rather than personal use. *Id.* In this case, the evidence establishes that Elvers was in possession of nearly 1,000 different packages of spice and bath salt products, and of the samples submitted to the State Police Lab, nearly all tested positive for a controlled

substance. Many of the seized items were labeled with a price tag. It is undisputed that Elvie's was in the business of selling spice and bath salts and, on prior occasions, had sold products containing synthetic drugs to an undercover police officer. We find that this evidence sufficiently establishes that Elvers had an intent to deliver.

Elvers directs our attention to other evidence indicating that he lacked the requisite intent to deliver. During the trial, he testified that when the Synthetic Drug Law was amended on March 15, 2012, he "instructed the staff to remove all the products that could possibly be covered by the new law, lock them up, refuse to sell them." (Tr. p. 411). Additionally, Detective Nielson testified that when he visited Elvie's four days later, the spice and bath salt products were no longer on display, and a clerk informed him that these products were no longer being sold. When the officers executed the search warrant, with the exception of a few packets of contraband seized from the store manager's purse, they found all of the spice and bath salts inside of a locked bathroom closet, with some products even further locked up in a gun safe. Elvers explained that he believed he had a thirty-day grace period to turn in any illegal products without the threat of prosecution, and he intended to keep them locked up until he could return the products to the manufacturers for a refund.

Elvers' argument is largely a request that we reweigh evidence, which we decline to do. JWH-122 and JWH-250 were clearly banned as of July 1, 2011, and the evidence reveals that Elvers continued to possess and sell substances containing these synthetic drugs despite their illegal status. Moreover, for purposes of the Synthetic Drug Law, a delivery "merely requires the actual or constructive transfer of the controlled substance."

17

*Cline v. State*, 860 N.E.2d 647, 650 (Ind. Ct. App. 2007). Thus, even if the jury believed Elvers' testimony that he had no plans to covertly sell the merchandise, he admittedly had every intent to transfer the synthetic drugs back to the manufacturers for a refund, which we find is sufficient to sustain his conviction for dealing in a synthetic drug.

CONCLUSION

Based on the foregoing, we conclude that the Synthetic Drug Law is not unconstitutionally technical; the State properly enhanced Elvers' charges based on the weight of the synthetic drugs in their adulterated form; the Information sufficiently apprised Elvers of the crimes with which he was charged; the search warrant is not defective; and there is sufficient evidence to support a conviction for dealing in a synthetic drug. We further conclude that the State improperly charged Elvers with two Counts of dealing in the synthetic drug JWH-122 and remand with instructions for the trial court to vacate the conviction on Count V.

Affirmed in part, vacated in part, and remanded.

MATHIAS, J. and CRONE, J. concur