

FILED

Oct 10 2018, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E. C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryan Stone,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 10, 2018<br><br>Court of Appeals Case No.<br>34A02-1710-CR-2514<br><br>Appeal from the Howard Superior<br>Court<br><br>The Honorable William C.<br>Menges, Judge<br><br>Trial Court Cause No.<br>34D01-1406-FA-453 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Bryan Stone (Stone), appeals his conviction for two counts of dealing in a synthetic drug or synthetic drug lookalike substance, both as Class D felonies, Ind. Code §§ 35-48-4-10.5 (b)(2); -(c)(1)(B).[1]

# ISSUES

Stone presents two issues for our review which we restate as:

> 1) Whether his conviction on two counts of dealing in synthetic drug or synthetic drug lookalike substance violates double jeopardy principles; and
>
> 2) Whether he was denied a fair trial by the admission of evidence stemming from the search of his backpack.

We affirm in part, reverse in part, and remand with instructions.

# FACTS AND PROCEDURAL HISTORY

On June 12, 2014, Officer Alex Harper (Officer Harper) of the Kokomo Police Department responded to a call of a domestic battery in progress in the area of Apperson and Elm streets involving a black male wearing a striped shirt choking a black female. Officer Harper responded to a home at 1030 Apperson

---

[1] The synthetic drug statute was substantially revised by legislation that went into effect on July 1, 2014, after Stone was charged in this matter.

where he observed Stone, who fit the description provided in the call, standing with a black female. Officer Harper exited his car to approach them. Stone saw Officer Harper, turned around, and quickly walked away towards the back of the home. As Stone walked away, Officer Harper saw that Stone was carrying a black and red backpack. Officer Harper believed that Stone was attempting to flee, so he followed him. As Officer Harper rounded the corner of the home, Stone was walking back towards him, albeit without the backpack.

[5] Officer Harper asked Stone for his name. Stone appeared to be very nervous. He was shaking and kept repeating, "my name?" (Transcript Vol. I, p. 120). Stone eventually identified himself. Officer Harper spoke to Stone and the female with him, both of whom denied that they had been arguing or that a battery had taken place.

[6] As Officer Harper spoke with Stone, additional officers arrived to assist, including Officer Jason Maynard (Officer Maynard). Officer Maynard made initial contact with Officer Harper and then began to walk around the home, which appeared to be vacant. In Officer Maynard's experience, it was not uncommon for citizens to dump contraband if law enforcement had been summoned. Officer Maynard walked to the side of the property where there was a stairwell. At the bottom of the stairwell perched on top of trash and debris was a black and red backpack. Officer Maynard yelled to Officer Harper, who was approximately twenty feet away out of Officer Maynard's line of sight talking to Stone, and inquired whether Stone had been carrying a backpack.

Officer Harper confirmed that Stone had been carrying the backpack Officer Maynard had found.

[7] The backpack contained over 300 packets of synthetic marijuana, known as "spice." (Tr. Vol. I, p. 83). Some of the packets of synthetic marijuana were labeled "Caution, [S]uper-[S]trong [I]ncense." (Tr. Vol. I, p. 87). Others were labeled "Fidel Mix." (Tr. Vol. I, p. 88). The backpack also contained two prescription pill bottles that did not bear Stone's name. Officer Harper detained Stone by placing him in handcuffs. After Officer Harper had provided Stone with his *Miranda* advisements, Stone denied that the backpack belonged to him. In the area where the backpack had been in the stairwell, Officer Maynard subsequently found a plastic bag containing eleven smaller baggies of a white powdery substance that field tested positive for cocaine.

[8] On June 13, 2014, the State filed an Information charging Stone with dealing in cocaine, a Class A felony; possession of cocaine, a Class A felony; and unlawful possession or use of a legend drug, a Class D felony. On September 24, 2014, the State filed an amended Information reflecting the fact that the white powdery substance found was heroin and charging Stone with dealing in a narcotic drug, a Class B felony; and possession of a narcotic drug, a Class B felony. The State also charged Stone with two identical counts of dealing in a synthetic drug or synthetic drug lookalike substance, both as Class D felonies, in relevant part, as follows:

> [O]n or about June 12, 2014 at or near Apperson and Elm, Kokomo in Howard County, State of Indiana, [Stone] did

knowingly or intentionally possess with the intent to deliver a synthetic drug or synthetic drug lookalike substance, to-wit: XLR11 in an amount greater than 2 grams[.]

(Appellant's App. Vol. II, pp. 48-49). On June 13, 2014, while Officer Harper collected a sample of Stone's DNA after his arrest, Stone told Officer Harper that the spice found in the backpack was his.

[9] On September 9, 2014, Stone filed a motion to suppress that the trial court denied on December 5, 2014. Stone's jury trial took place on May 19, 22-23, 2017. During its closing arguments, the State argued that

> [t]here isn't any question from the evidence that you heard that those packages that you saw, Exhibits, I believe it's 5 and 6, are synthetic drugs. They're a synthetic drug called XLR11. There were two different, I believe the evidence is there were two packages, one was Fidel Mix which the chemist determined had more than 2 grams of this XLR11, and the other one was Caution Incense, and the chemist determined that one had more than 2 grams of XLR11, so when they looked at the Informations, you have two Informations, Counts V and VI, which may appear to you to be identical. I did misstate, the Informations are IV and V, (inaudible) V, they appear to be identical but the elements supporting them is not the same because one is supported by the Fidel Mix with more than 2 grams, and the other one was supported by the Caution with more than 2 grams. And I point that out so you don't get confused and then we have all of the remaining 200 or 305 packages which were not sent to the lab.

(Tr. Vol. I, pp. 189-90). During his closing statement, Stone's defense counsel argued that

[t]here is no doubt that Bryan Stone possessed the spice. There is no doubt that this bag contained whoever you believe, 200 or 300 bags of spice and you don't use that for personal use. That was apparent itself. He possessed it, possessed the duffle bag that it was in, and I'm not going to sit up here and (inaudible) by telling (inaudible) hopefully (inaudible).

(Tr. Vol. I, p. 198). The jury found Stone not guilty of all charges apart from the two synthetic drug charges. On July 20, 2017, the trial court sentenced Stone to 1,095 days for each conviction, to be served concurrently.

Stone now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Double Jeopardy*

Stone argues that his convictions for two counts of dealing in a synthetic drug or synthetic drug lookalike substance violate Article 1, Section 14, of the Indiana Constitution.[2] Specifically, Stone contends that his convictions violate Indiana's Double Jeopardy Clause because "[d]ividing the '307 bags of spice' found at one time from one source, diving it into components, each 'greater than 2 grams' does not legally create multiple crimes." (Appellant's Br. at 12) (quotation marks in the original). We review challenges under Indiana's Double Jeopardy Clause *de novo*. *Bennett v. State*, 5 N.E.3d 498, 515 (Ind. Ct. App. 2014), *reh'g denied*, *trans. denied*.

---

[2] Stone does not argue that his convictions violate the federal Double Jeopardy Clause.

[12]     For purposes of Article 1, Section 14, of the Indiana Constitution, two or more offenses are the same offense if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis omitted).

[13]     In *Campbell v. State*, 734 N.E.2d 248 (Ind. Ct. App. 2000), this court addressed the issue of whether our state's Double Jeopardy Clause prohibited multiple convictions for possession where a defendant simultaneously possessed separate quantities of the same illegal drug. After a confidential informant made a controlled buy from him, Campbell was arrested in front of his home and was found to have cocaine on his person. *Id*. at 250. Campbell's home was subsequently searched pursuant to a search warrant, and cocaine was also found there. *Id*. The State charged Campbell with two counts of possession of cocaine for having possessed it on his person and for having possessed it in his home. *Id*. This court held that Campbell could only be convicted of one count of cocaine possession because he had simultaneously possessed the cocaine in his home and on his person. *Id*. The *Campbell* court found a separate concurring opinion by Judge Shields on rehearing in *Young v. State*, 564 N.E.2d 968, 973 (Ind. Ct. App. 1991) to be persuasive:

> Young's double jeopardy protection is breached by multiple convictions based upon the location Young had the cocaine which he simultaneously possessed, be it in part in his left trousers' pocket and in part in his right trousers' pocket, or in part

in his right trousers' pocket and in part underneath the car seat on which he sat, or, as here, in part on his person and in part in a spray can in his car from which he was removed immediately following the vehicle's stop. The essence of the offense of possession is the possession. Thus, just as the simultaneous possession of a stolen watch and a stolen wallet constitutes but one offense of theft, so too, the possession of the cocaine on a particular occasion is but one offense; the effect of the accumulated quantity possessed is to aggravate the possession rather than to break it into multiple possessions.

*Campbell*, 734 N.E.2d at 250-51.

[14]     In the more recent case of *Elvers v. State*, 22 N.E.3d 824 (Ind. Ct. App. 2014), this court addressed the issue of whether the simultaneous possession of different brands of spice could support the imposition of multiple charges for possession with intent to deliver. *Id*. at 832-33. The State had seized 10.62 grams of "Kryp2Nite Original" packages containing the prohibited synthetic drug JWH-122 from Elvers' bathroom closet. *Id*. at 832. The State had also seized 3.89 grams of spice products containing JWH-122 bearing the brand names "Spike Max" and "K4Silver" from Elvers' gun safe. *Id*. The State charged Elvers with two counts of dealing in substances containing JWH-122 in excess of two grams. *Id*. Elvers argued that the separate charges indicated that he had been charged for possession of the specific spice brand names rather than with possession of the prohibited compound JWH-122. *Id*. at 833. We agreed and held that the State should have only charged Elvers with one count of dealing in a synthetic drug because Elvers effectively had been convicted of

two violations arising from his single act of simultaneously possessing multiple products containing JWH-122. *Id.*

[15] Here, the State charged Stone with two identical counts of possessing with intent to deliver the prohibited compound XLR11 in an amount greater than two grams on June 12, 2014. Both charges stemmed from his simultaneous possession of two packets of spice each containing over two grams of XLR11 on June 12, 2014, that were found in his backpack. In light of *Campbell* and *Elvers*, we hold that the State was not permitted to break that simultaneous possession into multiple possessions based solely upon the fact that the packets containing the spice bore different brand names, which was the only distinguishing fact argued by the State at trial to support the two separate charges. Stone's convictions for both counts of dealing in a synthetic drug or synthetic drug lookalike substance violated Indiana's prohibition against double jeopardy. Accordingly, we reverse and remand to the trial court with instructions to vacate one of Stone's convictions.

## II. *Backpack Search*

[16] Stone next contends that the search of his backpack violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11, of the Indiana Constitution. Ordinarily, we review a trial court's decisions on the admission of evidence for an abuse of the trial court's discretion. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). However, such decisions are not subject to review unless a contemporaneous objection was made at trial, regardless of the fact that the defendant filed a pretrial motion to suppress. *Jackson v. State*,

735 N.E.2d 1146, 1152 (Ind. 2000). Stone did not object at trial to the admission of the evidence garnered from the search of his backpack. As he recognizes on appeal, Stone's claim of error is waived unless he can establish that the admission of the challenged evidence constituted fundamental error.

[17] The doctrine of fundamental error is narrow and may lead to reversal only where there has been a "'blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Mamon v. State*, 6 N.E.3d 488, 490 (Ind. Ct. App. 2014) (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). In *Brown v. State*, 929 N.E.2d 204 (Ind. 2010), our supreme court noted that the admission of evidence as the result of an improper search or seizure does not automatically require reversal, and indeed, does not rise to the level of fundamental error where there is "no claim of fabrication of evidence or willful malfeasance" on the part of officers or where there is no contention that the "evidence is not what it appears to be." *Id.* at 207. The fundamental error doctrine will, therefore, only be applicable in "'egregious circumstances.'" *Id.* (citation omitted).

[18] Here, Stone's factual guilt is not at issue, as he conceded at trial that he possessed the backpack and the spice. On appeal, Stone does not allege, let alone establish, that evidence was fabricated or that the challenged evidence was not what it appeared to be. Stone seemingly intimates that at least one law enforcement officer involved in this case acted improperly, as he suggests that Officer Harper had an ulterior motive for searching his backpack based on his

prior knowledge of Stone. However, our review of the record does not disclose any willful malfeasance by law enforcement in this case. The claimed error does not rise to the level of fundamental error, and we decline to review the admissibility of the evidence garnered from the search of Stone's backpack. *Mamon*, 6 N.E.3d at 490 (finding no fundamental error and declining to review the merits of Mamon's Fourth Amendment and Article 1, Section 11, claims based on evidence garnered from a traffic stop).

# CONCLUSION

Based on the foregoing, we conclude that Stone waived his claim of error based upon the admission of evidence gathered from the search of his backpack but also conclude that his conviction for two counts of dealing in a synthetic drug or synthetic lookalike drug violated double jeopardy principles. We reverse in part and remand this matter to the trial court to vacate one of Stone's convictions.

Affirmed in part, reversed in part, and remanded with instructions.

Vaidik, C. J. and Kirsch, J. concur