# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEVEN P. MEYER**
**CARLOS I. CARRILLO**
Ball Eggleston PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
May 09 2012, 8:42 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DOUGLAS P. WILSON, JR.,                    )
                                           )
    Appellant-Defendant,              )
                                           )
      vs.                          )    No. 79A05-1107-CR-350
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.               )

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1006-FB-18

**May 9, 2012**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Douglas Wilson appeals his convictions and sentence for Class B felony dealing in a narcotic drug, Ind. Code § 35-48-4-1 (2006); Class D felony possession of a narcotic drug, Ind. Code § 35-48-4-6 (2006); Class A misdemeanor resisting law enforcement, Ind. Code § 35-44-3-3 (2006); and Class A misdemeanor operating a vehicle while suspended, Ind. Code § 9-24-19-2 (2000). We affirm.

## ISSUES

Wilson raises four issues, which we consolidate and restate as three:

I. Whether the trial court erred by admitting evidence of items discovered during a search of Wilson's vehicle that occurred after a police officer stopped the vehicle and Wilson fled from it.

II. Whether the evidence is sufficient to sustain Wilson's convictions for Class B felony dealing in a narcotic drug and Class D felony possession of a narcotic drug.

III. Whether Wilson's sentence is inappropriate.

## FACTS AND PROCEDURAL HISTORY

Around 11:30 p.m. on February 27, 2010, Officer Nathan Lamar of the Lafayette Police Department was patrolling a high crime area. As he turned off Concord Road and entered the parking lot of Riehle Brothers, a local bar, he saw a man, later identified as Wilson, exit the bar and walk quickly to a maroon Mazda parked in a handicapped parking space. The vehicle did not have a handicapped plate or permit. Officer Lamar drove past the vehicle, noted the plate number, and entered it into his computer. The computer showed that the registered owner had a suspended driver's license and two outstanding arrest warrants. Officer Lamar continued through the parking lot, saw the

2

vehicle on Concord Road, and attempted to catch up to it. The vehicle turned into a nearby strip club and pulled into a parking space. Officer Lamar pulled up behind the vehicle and activated his emergency lights. He exited his patrol car, stood next to it, and waited for a break in the radio transmission so that he could notify other officers of the traffic stop. While he was waiting, Wilson, the only occupant of the vehicle, stepped out. Officer Lamar told him to get back into his vehicle, and Wilson complied. There was a break in the radio transmission, and Officer Lamar began to transmit information. At that point, Wilson stepped out of his vehicle for a second time. Officer Lamar stopped his transmission and again ordered Wilson to get back into his vehicle. This time, Wilson turned away from Officer Lamar and fled. Officer Lamar chased him but was unable to apprehend him. A subsequent police search was unsuccessful.

Upon returning to his patrol car and looking up a photo of the registered owner of the vehicle, Officer Lamar identified Wilson as the registered owner. Wilson's vehicle was locked. Another officer was already preparing paperwork to tow the vehicle. After the tow truck driver arrived and unlocked the vehicle, Officer Lamar conducted an inventory search. In the center console, he found a pill bottle prescribed to Crystal Mickschl for 240 hydromorphone pills. The bottle contained five empty cellophane wrappers. In the glove box, Officer Lamar found a makeup bag containing two more pill bottles prescribed to Mickschl, both with fill dates of February 25, 2010. One bottle was for 240 hydromorphone pills but contained only 101 pills. The label directed Mickschl to take two pills every six hours. The second bottle was for 90 morphine sulfate pills but contained only 58 pills. The label directed Mickschl to take one pill every eight hours.

3

Mickschl was later determined to be Wilson's girlfriend. After the search, the vehicle was impounded.

Wilson was located in April 2010. The State charged him with two counts of Class B felony dealing in a narcotic drug (one count each for hydromorphone and morphine sulfate), two counts of Class D felony possession of a narcotic drug (one count each for hydromorphone and morphine sulfate), Class A misdemeanor resisting law enforcement, and Class A misdemeanor operating a vehicle while suspended.

Wilson filed a motion in limine, which the trial court treated as a motion to suppress. At a hearing, Wilson argued that the impoundment of his vehicle was unjustified and that the evidence of items discovered during the inventory search therefore required suppression. The trial court denied the motion to suppress.

At a jury trial, Officer Lamar testified for the State. Wilson objected to the evidence of items found during the search of his vehicle, which the trial court overruled. The State presented testimony that cellophane wrappers are commonly used to package pills for illegal sale. The State also presented testimony that on February 2, 2010, Wilson made a statement to a confidential informant that he expected to get 240 pills within the next two days and that he planned to sell them. Also at trial, a security guard for Riehle Brothers, Matthew Koning, testified that on February 26, 2010, he arrived at work early to shoot some pool before his shift. During a game with Wilson, Koning observed him pulling pills out of his pocket and offering to sell what he described as a type of morphine pill to people at a table next to theirs. Wilson wanted to sell the pills for ten dollars each but was willing to sell them for eight dollars each. Koning did not see anyone buy any

4

pills. He reported the incident to his acting supervisors. The next night, Wilson returned to Riehle Brothers. Koning believed Wilson saw him talking with a police officer. Wilson walked quickly out of the bar. Mickschl, who had married Wilson in April 2010, testified for the defense.

The jury found Wilson guilty of all charges except for the dealing charge relating to morphine sulfate, on which the jury did not return a verdict. The trial court declined to enter a judgment of conviction on the verdict for possessing hydromorphone, finding that it merged into the conviction for dealing hydromorphone. At sentencing, the trial court found Wilson's history of criminal or delinquent activity as an aggravator. As mitigators, the trial court noted Wilson's mental illness, his family support, and his good work history. The court also found Wilson's alcohol and drug problems as a mitigator but noted that such a mitigator was "diminished in force" in light of the fact that Wilson had gone through a treatment program but then "return[ed] to a life involving drugs." Tr. p. 347. The trial court found that the aggravator outweighed the mitigators and sentenced Wilson to an aggregate term of thirteen years, with one year suspended to probation. Wilson now appeals.

DISCUSSION AND DECISION

Wilson contends that the trial court erred by admitting the evidence of items found during the search of his vehicle, that the evidence is insufficient to sustain his convictions for Class B felony dealing in a narcotic drug and Class D felony possession of a narcotic drug, and that his thirteen-year sentence is inappropriate.

5

## I. ADMISSIBILITY OF EVIDENCE

Wilson contends that the search of his vehicle violated the Fourth Amendment to the United States Constitution and that the trial court therefore erred by admitting the evidence of items discovered during that search. The Fourth Amendment prohibits unreasonable searches and seizures. *W.H. v. State*, 928 N.E.2d 288, 294 (Ind. Ct. App. 2010), *trans. denied*. The protections of the Fourth Amendment have been extended to the states through the Fourteenth Amendment. *Id.* Evidence obtained in violation of a defendant's Fourth Amendment rights may not be introduced against him at trial. *Id.* A search or seizure may generally only be conducted pursuant to a lawful warrant. *Bryant v. State*, 660 N.E.2d 290, 300 (Ind. 1995). Because warrantless searches are per se unreasonable, the State bears the burden of establishing that a warrantless search falls within one of the well-delineated exceptions to the warrant requirement. *Johnson v. State*, 766 N.E.2d 426, 432 (Ind. Ct. App. 2002), *trans. denied*. One exception to the warrant requirement is an inventory search of an impounded vehicle. *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind. 2002). We may affirm a trial court's judgment on any theory supported by the evidence. *Id.*

Wilson argues that Officer Lamar's search was unreasonable because it was an improper inventory search. We need not decide whether the search was a proper inventory search, however, because the evidence shows that Wilson abandoned the vehicle before Officer Lamar searched it. Abandoned property is not subject to Fourth Amendment protection. *Wilson v. State*, 825 N.E.2d 49, 51 (Ind. Ct. App. 2005). However, if a defendant abandons property after he is improperly detained, the evidence

6

is not admissible. *See id.* In the context of abandoned vehicles and the Fourth Amendment, "the question is not whether someone 'had a proprietary or possessory interest in the automobile at the time of the police activity in question,' taking into account the 'subtle distinctions of common law property concepts,' but rather whether [the] 'defendant was entitled to and did have a reasonable expectation that the automobile would be free from governmental intrusion.'" 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.5(a) (4th ed. 2004) (quoting *State v. Achter*, 512 S.W.2d 894, 899 (Mo. Ct. App. 1974)).

In *United States v. Pittman*, 411 F.3d 813 (7th Cir. 2005), a police officer accompanied by a civilian observer pulled over the defendant's car because the rear license plate was not illuminated as required by Illinois law. When the defendant pulled to the side of the road, his passenger leapt out and ran. The passenger was found hiding in the basement of a house and placed in the backseat of the officer's car. The civilian observer then told the officer that as soon as the officer disappeared in pursuit of the passenger, the defendant fled as well. The officer searched the car's glove compartment, and the evidence found in that search was challenged on appeal. As one basis for upholding the search, the Seventh Circuit determined that the evidence would have been inevitably discovered because the police department had an established policy of conducting an inventory search when a vehicle is abandoned. The court then stated, "If the driver of a car flees at the approach of the police, this is pretty good evidence that he's abandoned the car—that he doesn't want to be associated with it and therefore isn't going to reclaim it." *Id.* at 817.

7

We find similar evidence of abandonment here. Upon learning that the registered owner of the maroon Mazda had a suspended driver's license and two outstanding arrest warrants, Officer Lamar initiated a traffic stop. Before Officer Lamar approached, Wilson fled. This is evidence that Wilson abandoned the vehicle.

Wilson attempts to refute this evidence of abandonment by pointing out that he locked the vehicle and took the keys with him. This argument is unpersuasive. First, Officer Lamar did not know where the keys were. Moreover, the fact that the vehicle was locked does not necessarily negate a reasonable inference that Wilson abandoned it. The vehicle was not parked on Wilson's own property or on the property of any acquaintance but instead left in the parking lot of a strip club. There is no evidence that the police knew of anyone else around to whom Wilson may have entrusted the vehicle. By abandoning the vehicle, Wilson relinquished any reasonable expectation of privacy in it. His Fourth Amendment argument therefore fails.[1]

## II. SUFFICIENCY OF THE EVIDENCE

Wilson next contends that the evidence is insufficient to sustain his convictions for Class B felony dealing in a narcotic drug (hydromorphone) and Class D felony possession of a narcotic drug (morphine sulfate).

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct.

---

[1] Wilson also claims that the search of his vehicle violated Article 1, Section 11 of the Indiana Constitution. However, because he presents no authority or independent analysis supporting a separate standard under the Indiana Constitution, his claim is waived. *See Lockett v. State*, 747 N.E.2d 539, 541 (Ind. 2001).

8

App. 2010), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. *Id.* A conviction may be based upon circumstantial evidence alone. *Id.* Reversal is appropriate only when reasonable people would not be able to form inferences as to each material element of the offense. *Id.*

To convict Wilson of Class D felony possession of a narcotic drug as charged here, the State had to prove beyond a reasonable doubt that Wilson knowingly or intentionally possessed morphine sulfate without a valid prescription or order of a practitioner acting in the course of his professional practice. Appellant's App. p. 10; *see* Ind. Code § 35-48-4-6(a). To convict Wilson of Class B felony dealing in a narcotic drug as charged here, the State had to prove beyond a reasonable doubt that Wilson possessed hydromorphone with intent to deliver. Appellant's App. p. 7; *see* Ind. Code § 35-48-4-1(a)(2)(C).

Wilson's challenge is twofold. First, he argues that the evidence is insufficient to show that he possessed either drug. Second, he argues that the evidence is insufficient to show that he intended to deliver hydromorphone.

A conviction for possession of contraband may rest upon proof of either actual or constructive possession. *Washington v. State*, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009), *trans. denied*. Actual possession occurs when a person has direct physical control over the contraband. *Massey v. State*, 816 N.E.2d 979, 989 (Ind. Ct. App. 2004). Wilson did not have direct physical control over the morphine sulfate or hydromorphone pills;

9

therefore, we consider whether the State established that he constructively possessed them.

Constructive possession occurs when someone has the intent and the capability to maintain dominion and control over the contraband. *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009), *trans. denied*. To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband. *Iddings v. State*, 772 N.E.2d 1006, 1015 (Ind. Ct. App. 2002), *trans. denied*. This knowledge may be inferred from the defendant's exclusive dominion and control over the premises containing the contraband. *Ables v. State*, 848 N.E.2d 293, 297 (Ind. Ct. App. 2006). Because Wilson was the driver and sole occupant of the vehicle when Officer Lamar stopped him, he had exclusive possession of the vehicle. *See Whitney v. State*, 726 N.E.2d 823, 826 (Ind. Ct. App. 2000) (determining that trial court could reasonably conclude defendant was in exclusive possession of vehicle where he was the driver and sole occupant when stopped by police). A jury could therefore reasonably infer his knowledge of the presence of the morphine sulfate and hydromorphone pills, which in turn demonstrates his intent to maintain dominion and control over them.

Wilson nonetheless points to Mickschl's testimony to challenge the evidence that he knew of the presence of the pills. Mickschl testified that Wilson dropped her off at the strip club, and she put her makeup bag with the pills in the glove box because she did not want to carry them with her. This is merely a request to reweigh the evidence. Moreover, even crediting this testimony, a jury could still reasonably infer Wilson's

10

knowledge of the presence of the pills because he would have been in the vehicle when Mickschl left them there.

The capability element is shown when the State demonstrates that the defendant is able to reduce the contraband to his personal possession or to otherwise direct its disposition or use. *Iddings*, 772 N.E.2d at 1015. Proof of a possessory interest in the premises in which contraband is found is adequate to show the capability to maintain dominion and control. *Davenport v. State*, 464 N.E.2d 1302, 1307 (Ind. 1984). Wilson was the registered owner of the vehicle and its only occupant at the time Officer Lamar stopped him. He therefore had the capability to maintain dominion and control over the pills. The evidence is sufficient to show that Wilson constructively possessed morphine sulfate and hydromorphone.

We next consider the sufficiency of the evidence as to Wilson's intent to deliver hydromorphone. The intent to deliver a narcotic drug in one's possession may be proven by either direct or circumstantial evidence. *Davis v. State*, 863 N.E.2d 1218, 1220 (Ind. Ct. App. 2007), *trans. denied*. Intent involves a person's state of mind, and a factfinder may infer its existence from the surrounding circumstances. *Id.*

The evidence most favorable to the verdict shows that on the day of the incident, February 27, 2010, Officer Lamar found two hydromorphone pill bottles prescribed to Mickschl in Wilson's vehicle. One bottle contained cellophane wrappers, which are commonly used to package pills for illegal sale. The other bottle indicated that it had been filled just two days before with 240 hydromorphone pills, with two pills to be taken every six hours, but only 101 pills remained. One day before the incident, Koning saw

11

Wilson pulling pills out of his pocket and offering to sell what he described as a type of morphine pill to Riehle Brothers patrons. Wilson returned to Riehle Brothers the next night, February 27, 2010, but left after seeing Koning speaking with a police officer. Earlier in February, Wilson told a confidential informant that he expected to get 240 pills within the next two days and that he planned to sell them. This evidence is sufficient to show that Wilson intended to deliver hydromorphone.

We therefore conclude that the evidence is sufficient to sustain Wilson's convictions for Class B felony dealing in a narcotic drug and Class D felony possession of a narcotic drug.

### III. INAPPROPRIATE SENTENCE

Wilson finally contends that his thirteen-year sentence is inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007)). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

We first look to the statutory ranges established for the classes of the offenses. Wilson was convicted of a Class B felony, a Class D felony, and two Class A

misdemeanors. The statutory range for a Class B felony is between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5 (2005). The statutory range for a Class D felony is between six months and three years, with the advisory sentence being one and a half years. Ind. Code § 35-50-2-7(a) (2005). For a Class A misdemeanor, a person may not be imprisoned for more than one year. Ind. Code § 35-50-3-2 (1977). The trial court sentenced Wilson to an aggregate term of thirteen years, with one year suspended to probation.

We next look to the nature of the offenses and Wilson's character. As for the nature of the offenses, Wilson drove a vehicle even though his driver's license was suspended and fled from Officer Lamar during a traffic stop. He possessed Mickschl's prescription medication and intended to sell the hydromorphone pills.

As for Wilson's character, we acknowledge that he has mental health issues, which were also recognized by the trial court. However, his criminal record alone justifies the sentence imposed by the trial court. As a juvenile, Wilson was adjudicated a delinquent child for what would be child molesting if committed by an adult. Wilson, thirty-six years old at the time of these offenses, has misdemeanor convictions for criminal conversion, theft, possession of paraphernalia, invasion of privacy, operating a vehicle while never receiving a license, and driving while suspended. He has felony convictions for burglary, theft, and escape. He has also been adjudged to be a habitual offender. Wilson has been placed on probation and found to have violated that probation. Moreover, Wilson has substance abuse issues. He has used marijuana, cocaine, crack cocaine, heroin, and methampethamine. His abuse of prescription pills is extensive. The

13

presentence investigation report indicates that Wilson reported to have used 5 to 6 morphine pills a day for 9 months at age 36, 5 to 6 Dilaudid pills a day for 9 months at age 36, approximately 10 Percocet pills a day between the ages of 33 and 36, and approximately 10 Xanax pills a day between the ages of 29 and 36. Further, Wilson has a child support arrearage of around $20,000.

Wilson has failed to persuade us that his sentence is inappropriate.[2]

### CONCLUSION

For the reasons stated, we affirm Wilson's convictions and sentence.

Affirmed.

MAY, J., and BROWN, J., concur.

---

[2] In arguing that his sentence is inappropriate, Wilson states that "[t]he trial court failed to give proper weight to Wilson's mental health." Appellant's Br. p. 21. To the extent Wilson is arguing that the trial court abused its discretion in sentencing him, he fails to present any authority to support his contention. In any event, the relative weight of aggravating and mitigating circumstances is not subject to review for abuse. *Anglemyer*, 868 N.E.2d at 491.